**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LAKISHA VAUGHAN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-2932 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| CAPITAL CITY PROTECTIVE | | | |
| SERVICES, II LLC, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

## I.  INTRODUCTION

Plaintiff Lakisha Vaughan brought this suit in the District of Columbia against Capital City Protective Services, II LLC ("Capital City"), alleging discrimination based on sex and retaliation, in violation of Title VII of the Civil Rights Act of 1964, the District of Columbia Human Rights Act ("DCHRA") and the Prince George's County Code, as authorized by Maryland Code § 20-1202.  Capital City moved to dismiss or, in the alternative, transfer venue to the U.S. District Court for the District of Maryland, arguing that Vaughan has not satisfied the special venue provisions that would allow her to bring suit in the District of Columbia under Title VII.  The Court disagrees with Capital City and denies the motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Capital City is a security company organized under the laws of the Maryland and is headquartered in Prince George's County.  Compl. ¶ 4, ECF No. 1.  It provides security services in the District of Columbia, where Plaintiff Lakisha Vaughan primarily works.  *Id.* ¶ 5.  As alleged in the Complaint, Vaughan was employed by Capital City in April 2018 to work as a

D.C. Special Police Officer in the company's Shelter Unit in the District.  *Id.*  In June 2018,
Vaughan notified Captain Ray Gordon, commander of the company's Housing Unit, of her
request for transfer to that unit, as well as her intention to seek a shift change.  *Id.* ¶ 6.  Vaughan
believed that both requests would have resulted in increased hourly pay, greater potential for
promotion, and working hours that are more suitable to her home life.  *See id.*

The Complaint describes two allegations of sexual assault that occurred in Maryland.
The first occurred after Gordon informed Vaughan that the company "was granting her transfer
request" and invited her to the company's Prince George's County headquarters in Maryland to
sign the necessary paper work.  *Id.* ¶ 7.  When Vaughan first appeared, Gordon informed her to
return later in the evening because the paperwork was not ready.  *Id.*  When Vaughan returned to
the headquarters, she found a group of officers, including Gordon, gathered together.  *Id.* ¶ 8.
Gordon and another officer invited Vaughan to drink; she felt awkward but accepted, drinking
only a small amount.  *Id.*  Gordon then invited Vaughan into his office to sign the paperwork.
He "closed the door, turned off the lights, undid his belt, walked up behind her, and started
taking off her pants . . . and . . . began sexually assaulting her."  *Id.* ¶¶ 10–11.  Gordon told
Vaughan that "he would make sure she got the 7 a.m. to 3 p.m. shift she had requested, and a
promotion to Sergeant."  *Id.* ¶ 11.  Vaughan "had done nothing to suggest to Captain Gordon that
she was interested in a sexual relationship," and "had not consented to his conduct in any way."
*Id.* ¶ 10.  One week later, the second incident of sexual assault allegedly occurred when Gordon
told Vaughan to meet him at an establishment he owned, also in Prince George's County, where
he again sexually assaulted her in the backseat of his vehicle.  *Id.* ¶¶ 15–16.  In both instances,
Vaughan did not protest, "fear[ing] that if she resisted, [Gordon] would take action that could
cause her to lose her job."  *Id.* ¶ 16.

The Complaint also describes allegations of sexual harassment that occurred in the District of Columbia. As a D.C. Special Police Officer for Capital City, Vaughan performed her duties primarily in the District. *Id.* ¶¶ 3, 5. After being twice sexually assaulted by Gordon in Maryland, Vaughan experienced "persistent sexual harassment" from Gordon and his male colleagues over the next two months, including "[visits to] her work site in the District" where they "leer[ed] at her in a sexual manner." *Id.* ¶ 17. Vaughan reported the harassment to Capital City in September 2018, but the company did not fire Gordon, nor take serious disciplinary actions against him or any of the other officers who harassed Vaughan. *See id.* ¶¶ 21–26 Vaughan alleges that the company, in retaliation, denied her transfer request, shift change and pay raise promised prior to her harassment complaint, and also denied her a similar assignment after the harassment complaint was filed. *See id.* ¶¶ 27–30. Vaughan also alleges that she received unwarranted disciplinary action for failing to notify her supervisor that she needed to miss a shift in the District due to a family emergency, even though she informed the same supervisor of the emergency. *Id.* ¶¶ 31–33. In October 2018, Vaughan was reassigned to another location in the District that was considered one of the "least desirable assignments," partly because of "frequent and serious criminal activity." *Id.* ¶ 39.

Vaughan filed suit in this Court, alleging discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, the DCHRA, and the Prince George's County Code. *See id.* ¶¶ 45–50. Capital City moved to dismiss or, in the alternative, transfer venue, arguing that Vaughan has not satisfied the special venue provisions that would allow her to bring suit in the District of Columbia under Title VII. *See* Def.'s Mot. Dismiss ("Def.'s Mot"), ECF No. 4.

### III.  LEGAL STANDARD

In determining whether venue is proper, courts must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *See Hunter v. Johann*s, 517 F. Supp. 2d 340, 343 (D.D.C. 2007); *Davis v. Am. Soc'y of Civil Eng'rs*, 290 F. Supp. 2d 116, 121 (D.D.C. 2003).  Any factual conflicts must be resolved in favor of the plaintiff.  *See Hunter*, 517 F. Supp. 2d at 343; *Davis*, 290 F. Supp. 2d at 121.

If venue is improper, in lieu of dismissal, a court may, "in the interest of justice," transfer the case to "any district or division in which it could have been brought."  28 U.S.C. § 1406(a); *see Sharp Elecs. Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228, 1230 (D.C. Cir. 1981).  The "standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it—thus preserving a [plaintiff's] ability to obtain review."  *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001).  It is within the court's discretion whether to transfer or dismiss the case.  *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983); *see also* 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3827 (4th ed. 2020) ("[I]t is enough simply that the district judge, in the sound exercise of discretion, concludes that transfer is in the interest of justice, as many courts have concluded."); *see also Braun v. U.S. Dep't of the Interior*, 288 F. Supp. 3d 293, 299–300 (D.D.C. 2018); *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 64 (D.D.C. 2011); *James v. Booz-Allen*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002).

### IV.  ANALYSIS

Under Title VII, which contains its own venue provisions, venue is proper in (1) "any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "the judicial district in which the employment records relevant to such practice

are maintained and administered," or (3) "the judicial district in which the aggrieved person

would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e–

5(f)(3). "[B]ut if the respondent is not found within any such district, such an action may be

brought within the judicial district in which the respondent has his principal office." *Id.* The

statute does not state a preference "for one venue over another where the facts establish that

more than one venue would be proper under the statute." *Materia v. Chao*, No. 06-cv-2251,

2007 WL 9770928, at *2 (D.D.C. July 6, 2007); 42 U.S.C. § 2000e–5(f)(3). Where it is unclear

that the claim arose in only one specific district, a plaintiff may choose among the districts in

which venue may be proper. *Materia*, 2007 WL 9770928, at *2 (citing *Leroy v. Great W. United

Corp.*, 443 U.S. 173, 185 (1979)). Construing the factual allegations in the light most favorable

to Vaughan, the Court finds that the District is a proper venue under the first and third prongs of

the venue provisions of Title VII and denies Capital City's motion to transfer venue.

      The District of Columbia is a proper venue because it is the "judicial district in the State

in which the unlawful employment practice is alleged to have been committed." 42 U.S.C.

§ 2000e–5(f)(3). Capital City argues that "[a]ll of the material events, decisions, and actions

that form the basis of [Vaughan's] complaint" occurred outside the District. Def.'s Mot. at 3.

To the contrary, Vaughan alleges that Capital City created an "intolerable work environment

which amounted to a constructive discharge of her employment in the District of Columbia."

Pl.'s Opp'n at 3, ECF No. 6; Compl. ¶¶ 40–41. Even though Capital City is headquartered in

Maryland, Vaughan has at all times, for purposes of this claim, worked in the District, where she

was employed by Capital City to work in the company's Shelter Unit as a D.C. Special Police

Officer. Compl. ¶ 5. Capital City admits Vaughan was primarily working in the District. *See*

Def.'s Mot. at 4. While Vaughan alleges instances of sexual assault that occurred in Prince

George's County, she also alleges "persistent sexual harassment from Captain Gordon," and other officers, consisting of "visiting her work site in the District of Columbia and leering at her in a sexual manner."  Compl. ¶ 17.  Vaughan also alleges that her supervisor "falsely [told] a resident in her regularly assigned building in the District of Columbia that she had been fired and escorted off of the property."  Pl.'s Opp'n at 3; Compl. ¶ 38.  In addition, she alleges that a forced reassignment changed her work site to a new location within the District that is "known to be more dangerous due to increased criminal activity."  Pl.'s Opp'n at 3.  Because Vaughan primarily worked in the District and alleges an unlawful employment practice, including sexual harassment, in the District, venue is proper under the first prong of Title VII's special venue provisions.  *Buesgens v. Coates*, 435 F. Supp. 2d 1, 4–5 (D.D.C. 2006) (giving weight to plaintiff's primary place of employment in Title VII claim).

Venue is also proper because the District of Columbia is "the judicial district in which [Vaughan] would have worked but for the alleged unlawful employment practice."  42 U.S.C. § 2000e–5(f)(3).  Pointing to *Booz-Allen*, Capital City argues that this statutory requirement, which refers to "the aggrieved individual's principal place of work, and not any district in which the individual's work might take him," does not apply to Vaughan.  Def.'s Mot. at 4 (quoting *Booz-Allen*, 227 F. Supp. 2d at 23).  Capital City's reliance on *Booz-Allen* is misplaced.  In that case, while the plaintiff alleged that he would have been transferred to the temporary office in the District of Columbia but for the discriminatory employment practice, the court disagreed because he was working primarily out of "the defendant's offices located in Seabrook, Maryland," which the court called his "base of operation."  *Booz-Allen*, 227 F. Supp 2d at 24.  In contrast, here the District is not simply "any district in which [Vaughan's] work might take [her]."  *Id.* at 23.  It is, in fact, the primary place where she performed her duties for Capital City

as a D.C. Special Police Officer.  Vaughan alleges that a campaign of retaliation and harassment

amounting to constructive discharge from employment deprived her of a position and other

employment benefits in the District.  *See* Compl. ¶¶ 45–50.  Specifically, Vaughan alleges that

the retaliation resulted in denial of (1) her request to be transferred to Capital City's Housing

Unit in the District, (2) her request for a shift change, which would have also occurred in the

District, and (3) the promised increase in salary that would have resulted from her work in the

District.  Pl.'s Opp'n at 2.  Unlike the plaintiff in *Booz-Allen*, Vaughan already worked primarily

in the District, and would have continued to work in the District were she not constructively

discharged through Capital City's alleged discrimination and harassment.[1]  Because Vaughan

would have worked in the District but for the alleged unlawful employment practices, the Court

finds venue proper in the District of Columbia.[2]

---

[1] The Court also finds Capital City's reliance on *Slaby v. Holder* unconvincing.  *See* Def.'s Mot. at 3 (citing 901 F. Supp. 2d 129 (D.D.C. 2012)).  In analyzing the third prong, the *Slaby* court found that guessing where an FBI agent-in-training would have worked would be "merely speculative before he was assigned a placement."  *Slaby*, 901 F. Supp. 2d at 134.  In contrast, Vaughan was not an employee-in-training waiting for a placement; she was, in fact, hired as a D.C. Special Police Officer working primarily within the District of Columbia.  Hence, this Court would not be speculating that, but for Capital City's alleged retaliation and discrimination amounting to constructive discharge, Vaughan would have worked in the District.

[2] Because venue is proper in the District, the Court need not address convenience, but will briefly do so here.  Capital City argues that justice and judicial economy support transfer of venue to Maryland because it is where the relevant employment records are maintained.  Def.'s Mot. at 5; 42 U.S.C. § 2000e–5(f)(3).  The Court finds this argument unconvincing.  Capital City's headquarters, where relevant employment records and witnesses may be found, is located at 4841 Walden Lane, Lanham, Maryland, roughly thirteen miles from the Constitution Avenue, Washington, D.C. offices of the District Court of the District of Columbia.  *See* Driving Directions from Capital City Protective Services to U.S. District Court for the District of Columbia, Google Maps, https://maps.google.com/ (follow "Directions" hyperlink; then enter relevant addresses in starting point and destination fields).  This is roughly the same distance that Gordon requested Vaughan to travel after her shift—from her work site in D.C. to Capital City's Lanham offices—to sign her transfer paperwork.  In comparison, the distance between Capital City's Lanham offices and the Southern Division of the District of Maryland, located at 6500 Cherrywood Lane, Greenbelt, Maryland, is roughly seven miles.  *See id.*  Any judicial economy achieved through transfer of venue is almost nonexistent.

This Court finds that venue is proper under the applicable venue provisions of Title VII. Because Vaughan may "choose among the districts in which venue may be proper," *Materia*, 2007 WL 9770928, at *2 (internal quotations omitted), the Court will retain jurisdiction and not transfer the case to the U.S. District Court for the District of Maryland.

## V.  CONCLUSION

For the foregoing reasons, Capital City's motion to dismiss or transfer venue (ECF No. 4) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 22, 2021                                                            RUDOLPH CONTRERAS
                                                                                                United States District Judge