**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LAKISHA VAUGHAN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-2932 (RC) |
| | : | | |
| v. | : | Re Document No.: | 17 |
| | : | | |
| CAPITAL CITY PROTECTIVE SERVICES II, LLC, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR HEARING**

**I. INTRODUCTION**

Plaintiff Lakisha Vaughan, former employee of defendant Capital City Protective Services II, LLC ("Capital City"), brought suit in this Court alleging discrimination based on sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"), the District of Columbia Human Rights Act of 1977, D.C. Code § 2-1401.01 ("DCHRA"), and the Prince George's County Code, as authorized by Maryland Code § 20-1202. Compl. ¶ 1, ECF No. 1.  Capital City has moved for summary judgment arguing that Vaughan has failed to exhaust administrative remedies by not obtaining a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC"), invalidating her Title VII claims. Def.'s Mot. Summ. J. & Req. Hr'g. ("Def.'s Mot.") at 1, 3, ECF No. 17.  In opposition to the motion, Vaughan filed a memorandum stating that she has in fact obtained a right-to-sue notice, even though not required given the amount of time since filing her EEOC charge, and that other avenues for relief are still available regardless.  Mem. Opp'n Mot. Summ. J. ("Pl.'s Opp'n") at 1, ECF No. 18.  For the reasons stated below, Capital City's motion is denied.

## II.  FACTUAL BACKGROUND[1]

Capital City is a for-profit business that provides security services in the District of Columbia.  Compl. ¶ 4.  In April 2018, Vaughan was hired by Capital City to work as a D.C. Special Police Officer in the company's Shelter unit.  *Id.* ¶ 5.  In this chain of command, Vaughan reported to Lieutenant Herbert Griffin III, who in turn reported to Captain Eric Henry, who lastly reported to Inspector Andre Jackson.  *Id.*   In June 2018, about two months after Vaughan's initial hire, Vaughan sought transfer to the Housing unit as well as a shift change because she believed such changes would increase her hourly pay, lead to future promotions, and allow her to be home when her child returned from school.  *Id.* ¶ 6.  Vaughan notified Captain Ray Gordon, commander of the Housing unit, of both requests.  *Id.*

Gordon informed Vaughan that Capital City "was granting her transfer request" and invited her to the company's Prince George's County headquarters in Maryland to sign the transfer and pay raise paperwork.  *Id.* ¶ 7.  When Vaughan first arrived at the headquarters right after her shift, Gordon told her to return later that evening because the paperwork was not ready.  *Id.*  When Vaughan returned, she found Gordon gathered with a group of officers, most of whom were drinking.  *Id.* ¶ 8.  Gordon and another officer invited Vaughan to have a drink to "celebrate her transfer."  *Id.*  Vaughan felt awkward but accepted, drinking only a small amount.  *Id.*  Gordon then asked Vaughan to come to his office to sign the paperwork.  *Id.* ¶ 9.  Gordon "closed the door, turned off the lights, undid his belt, walked up behind her, and started taking off her pants . . . . and . . . began sexually assaulting her."  *Id.* ¶¶ 10–11.  Gordon told Vaughan

---

[1] Because the factual record developed at this point in the litigation is sparse, the Court draws much of the following background from the allegations in the Complaint.  The Court recounts the Complaint's allegations concerning the events at issue for background only; it does not accept them as true or undisputed.

that "he would make sure she got the 7 a.m. to 3 p.m. shift she had requested, and a promotion to Sergeant." *Id.* ¶ 11.  Vaughan "had done nothing to suggest to Captain Gordon that she was interested in a sexual relationship," and "had not consented to his conduct in any way." *Id.* ¶ 10.

About a week later, Gordon told Vaughan to meet him at an auto-body shop he owned in Prince George's County. *Id.* ¶ 15.  Vaughan alleges that Gordon again sexually assaulted her in the backseat of his vehicle. *Id.* ¶¶ 15–16.  Vaughan "felt she had no choice but to submit to his unwelcome advances" and "feared that if she resisted, [Gordon] would take action that could cause her to lose her job." *Id.* ¶ 16.

After being twice sexually assaulted by Gordon, Vaughan experienced "persistent sexual harassment" from Gordon and his male colleagues over the next couple of months, including "[visits to] her work site" where they "leer[ed] at her in a sexual manner," texts with explicit images, and "suggest[ions] that she meet them at their homes." *Id.* ¶ 17.  Vaughan was "disgusted" by these actions and felt "extremely vulnerable" and "scared of retaliation," but ultimately reported the sexual harassment to Capital City management in September 2018. *Id.* ¶¶ 19, 21.  Capital City never followed up with Vaughan, did not fire Gordon, and did not take serious disciplinary actions against him or any of the other officers. *Id.* ¶¶ 24, 26.

Vaughan alleges that Capital City began a "retaliatory campaign" against her, first by denying the initial shift change and pay raise that she had been promised. *Id.* ¶ 28.  Vaughan's counsel then sent a letter to Capital City in early October raising concerns about sexual harassment and retaliation. *Id.* ¶ 29.  After that letter was sent, Capital City refused to assign Vaughan to a newly opened shift at her desired and formerly promised time. *Id.* ¶ 30.  Additionally, Capital City initiated disciplinary proceedings against Vaughan for failing to notify her supervisor of her absence due to a family emergency, even though she had in fact notified her

supervisor and had attempted to confirm with him via his requested channels. *Id.* ¶¶ 31–33. Vaughan was placed on "indefinite suspension" despite her attempts to explain the situation, at which point her attorneys sent another letter to Capital City asserting claims of unlawful retaliation. *Id.* ¶¶ 35–36. Vaughan was asked to attend another disciplinary meeting, during which she was informed of other infractions she believed were unfounded. *Id.* ¶ 37. On October 31, 2018, Vaughan was reassigned without explanation to another location that was considered one of the "least desirable assignments," partly because of "frequent and serious criminal activity." *Id.* ¶ 39. At this point, Vaughan felt she was unable to carry out her duties under these conditions and informed the company of her decision to leave, to which they did not protest. *Id.* ¶ 40.

On November 7, 2018, Vaughan filed a charge of sex discrimination and retaliation with the EEOC. Pl.'s Opp'n at 2. Vaughan's charge remained pending before the EEOC for almost two years, and on October 8, 2020, Vaughan's counsel wrote to the EEOC requesting the issuance of a right-to-sue notice. *See Id.* Vaughan filed suit in this Court on October 13, 2020, five days after she requested a right-to-sue notice and about 700 days since she had filed her initial EEOC charge. *See* Compl.; Pl.'s Opp'n Ex. 2 at 3, ECF No. 18-3. The EEOC had not responded to the request for a right-to-sue notice by the time Vaughan filed suit in this Court. *See* Pl.'s Opp'n Ex. 2 at 1. On October 27, two weeks after Vaughan had filed suit, the EEOC responded saying that Vaughan could expect to receive her right-to-sue notice by Thanksgiving. *Id.* After some delay, the EEOC issued the Notice of Right to Sue on June 23, 2021. Pl.'s Opp'n Ex. 3 at 1, ECF No. 18-4.

Capital City filed a motion to dismiss or transfer venue on November 10, 2020, which this Court denied on April 22, 2021. *See* Def.'s Mot. Dismiss, ECF No. 4; Mem. Op. Den.

Def.'s Mot. Dismiss, ECF No. 10.  Capital City filed its answer to the complaint about 100 days later on August 2, 2021.  *See* Def.'s Answer at 8, ECF No. 14.  Once discovery completed in March 2022, Capital City filed a motion for summary judgment in April, which the Court addresses here.  *See* Def.'s Mot.  In its motion, Capital City asserts the sole affirmative defense of failure to exhaust administrative remedies, claiming that Vaughan has not obtained a Notice of Right to Sue.[2]  *Id.* at 3.

### III.  ANALYSIS

#### A.  Legal Standards for a Motion for Summary Judgment and Failure to Exhaust

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The Court's inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–52.

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial

---

[2] By solely relying on the exhaustion defense, Capital City's motion only relates to Vaughan's Title VII claims.  This Court does not address the availability or viability of Vaughan's other purported avenues for relief, the DCHRA or the Prince George's County Code.  *See* Pl.'s Opp'n at 1.

burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the party opposing summary judgment must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. In doing so, the nonmovant may not rely on "statements that are impermissible hearsay or that are not based on personal knowledge." *Shuler v. District of Columbia*, 744 F. Supp. 2d 320, 327 (D.D.C. 2010) (citation and quotations omitted). In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the nonmovant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

Failure to exhaust administrative remedies is an affirmative defense. *See Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1058 n.3 (D.C. Cir. 1988) (MacKinnon, J., concurring) (citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)). In raising exhaustion as an affirmative defense, the defendant "bears the burden of proving by a preponderance of the evidence that the plaintiff has failed to exhaust [its] administrative remedies." *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 276 (D.D.C. 2011) (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). This burden requires more than "[m]eager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies." *Dobbs v. Roche*, 329 F. Supp. 2d 33, 38 (D.D.C. 2004).

**B. Capital City Forfeited the Exhaustion Defense, but Vaughan Did Not Argue Forfeiture**

Because Capital City did not include failure to exhaust administrative remedies as an affirmative defense in either its motion to dismiss or its answer, it forfeited the availability of the sole defense raised in its summary judgment motion. *See generally* Def.'s Mot. Dismiss; Def.'s

Answer. It is the law in the D.C. Circuit that an affirmative defense cannot be raised for the first time in a dispositive motion filed post-answer, but rather, must first be raised in a responsive pleading or in a pre-answer motion. *See Harris v. Sec'y, U.S. Dep't of Veterans Affs.*, 126 F.3d 339, 341 (D.C. Cir. 1997) (holding that an affirmative defense must be raised in a responsive pleading); *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) (fine-tuning *Harris* to clarify that an affirmative defense may be raised by pre-answer motion, but not post-answer motion); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 91 (D.D.C. 2005) ("Generally, an affirmative defense, such as failure to exhaust, must be raised in responsive pleadings."); *Jones v. Mukasey*, 565 F. Supp. 2d 68, 74 (D.D.C. 2008) ("[I]t is improper for defendant to raise [failure to exhaust administrative remedies] for the first time in his summary judgment motion."); *see also Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019) (resolving a split among the circuits by holding that Title VII's charge-filing instruction is not jurisdictional, and therefore may be forfeited if not "timely raised"). Because Capital City did not raise the exhaustion defense before filing a motion for summary judgment, the defense is unavailable.

A movant can only conceivably raise an affirmative defense in a summary judgment motion if also accompanied by a motion to amend the answer, which Capital City has not included here. In *Nurriddin v. Goldin*, the defendant raised the affirmative defense of exhaustion for the first time in its motion for summary judgment, but simultaneously moved for leave to amend its answer to include the exhaustion defense. 382 F. Supp. 2d at 90. The court granted the motion to amend, but also made clear that "[w]ithout this amendment, defendant could not assert the exhaustion arguments made in its motion for summary judgment." *Id.* at 91. Here, Capital City has not filed a motion to amend, so this Court cannot even consider granting summary judgment. If a movant attempts to raise affirmative defenses for the first time at the

7

summary judgment stage, "[i]t is clearly the motion to amend that is crucial." *Butler v. White*, 67 F. Supp. 3d 59, 67 (D.D.C. 2014). In *Butler*, Judge Lamberth even posed the exact scenario presented here: "If defendant had argued the affirmative defenses in its dispositive motion but never filed a motion to amend, *Harris* would certainly call for the forfeiture of defendant's affirmative defenses." *Id.* Such is the outcome here.

However, Vaughan's opposition to the motion for summary judgment does not raise the argument that Capital City has forfeited the exhaustion defense. *See generally* Pl.'s Opp'n. Therefore, Vaughan may well have forfeited the forfeiture argument—in other words, by not explicitly arguing that Capital City forfeited the exhaustion defense, Vaughan has in turn likely forfeited the possibility of asking the Court to deny the motion on those grounds. *See Lennon v. U.S. Theatre Corp.*, 920 F.2d 996, 1000 (D.C. Cir. 1990) (stating that a counter-plaintiff, by failing to point out the opposing party's omission of an affirmative defense, "in all likelihood waived any waiver defense" that may have been available); *cf. Solomon v. Vilsack*, 763 F.3d 1, 13 (D.C. Cir. 2014) (holding that defendant "forfeited his forfeiture argument" by failing to argue plaintiff's forfeiture before the district court, and therefore could no longer challenge the procedural preservation of plaintiff's claims). Accordingly, the Court explains below why Capital City's affirmative defense, even if not forfeited as a result of Vaughan's omission, nonetheless fails on its substance.

### C. Vaughan Has Exhausted Administrative Remedies

Even assuming the exhaustion defense is available, the Court denies Capital City's motion because Vaughan *has* obtained a right-to-sue notice from the EEOC, which cures any potential defect. *See* Pl.'s Opp'n Ex. 3. In its motion, Capital City relies on *Giardino v. District of Columbia* for the notion that the receipt of a right-to-sue notice is a condition precedent to the

8

initiation of a Title VII action.  *See* Def.'s Mot. at 3; 252 F.R.D. 18, 19 (D.D.C. 2008).  However, *Giardino* also states that a plaintiff's Title VII action cannot be dismissed for failure to receive a right-to-sue letter once the notice is received.  252 F.R.D. at 20; *see also Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983) ("[R]eceipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court."); *Holmes v. PHI Serv. Co.*, 437 F. Supp. 2d 110, 123 (D.D.C. 2006) ("[A] court should not dismiss [a Title VII] claim [for failure to exhaust administrative remedies] if, after filing the complaint but before dismissal, the plaintiff receives a corresponding right-to-sue letter from the EEOC.").  In other words, Capital City's failure-to-exhaust defense is moot now that Vaughan has obtained a right-to-sue notice.

To be clear, the fact that Vaughan filed suit before receiving a right-to-sue notice is not necessarily a "defect" that needed to be cured—her action had been pending before the EEOC for well over Title VII's 180-day period, and other courts have held that expiration of this period entitles a plaintiff to sue regardless of whether they have received a letter.  Title VII specifies that if the EEOC does not resolve a discrimination charge within 180 days, the EEOC "shall so notify the person aggrieved," *see* 42 U.S.C. § 2000e-5(f)(1), and another court in this district has construed this portion of the statute to stand for the proposition that a plaintiff is "free to come to Court once 180 days ha[s] elapsed from the filing of her administrative complaint." *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 139 (D.D.C. 2004), *amended on other grounds*, 400 F. Supp. 2d 257, 262 (D.D.C. 2005); *cf. Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982) (holding that the receipt of a right-to-sue notice is unnecessary because "it is entitlement to a 'right to sue' notice, rather than its actual issuance or receipt, which is a

prerequisite"); *Hill v. Washington Metro. Area Transit Auth.*, 231 F. Supp. 2d 286, 293 n.4 (D.D.C. 2002) (remarking that it would be "implausible" for the EEOC to have the ability to prevent a Title VII complainant from seeking judicial relief by refusing to issue a right to sue notice (quoting *Perdue*, 690 F.2d at 1093 n.5)).  Here, it does not appear that the EEOC notified Vaughan of the status of her claim once the 180-day mark passed, but instead, only contacted her after her counsel requested a right-to-sue notice in October 2020.  When Vaughan filed suit in this Court, her charge had been pending before the EEOC for about 700 days.  Therefore, under these cases, Vaughan was free to come to this Court as early as May 2019, which was 180 days from her EEOC filing in November 2018, and so was clearly permitted to bring suit in October 2020.

Capital City's motion for summary judgment is denied.  The exhaustion defense was raised too late, though the Court is hesitant to deny Capital City's motion on those grounds given that Vaughan failed to raise this point in opposition.  But even if the exhaustion defense were available as a result of Vaughan's omission, Vaughan covered her bases by obtaining a right-to-sue notice, and in any event, by suing once her claim had been pending with the EEOC for over 180 days—a procedural posture which other courts have held entitles a plaintiff to sue, even without a right-to-sue letter.

## IV.  CONCLUSION

For the foregoing reasons, Capital City's motion for summary judgment (ECF No. 17) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  06/27/2022                                                                              RUDOLPH CONTRERAS
                                                                                                               United States District Judge