**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LAKISHA VAUGHAN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:    20-2932 (RC) |
| | : | |
| v. | : | Re Document No.:    54 |
| | : | |
| CAPITAL CITY PROTECTIVE | : | |
| SERVICES II, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**DENYING DEFENDANTS ARMENTA BELL & CHRISTOPHER BELL'S MOTION TO DISMISS**

## I.  INTRODUCTION

Plaintiff Lakisha Vaughan was formerly employed by Capital City Protective Services II,

LLC, a private security company.  She sued Capital City Protective Services II, its purported

corporate successor, Capital City Protective Solutions, LLC (together, "Capital City"), and the

companies' co-owners, Armenta and Christopher Bell (collectively, "Defendants").  She alleges

that Defendants engaged in sex discrimination and retaliation in violation of Title VII of the

Civil Rights Act of 1964, the District of Columbia Human Rights Act of 1977, and the Prince

George's County Code, and that they committed fraudulent conveyance in violation of the

Maryland Uniform Fraudulent Conveyance Act.  The Bells have moved to dismiss the claims

against them as time-barred.  For the reasons discussed below, the Court denies the motion.

## II.  BACKGROUND

### A.  Factual Background

The operative facts have been recounted in the Court's prior memorandum opinions.  *See*

Mem. Op. Den. Def.'s Mot. Dismiss or Transfer Venue ("Venue Order"), ECF No. 10; Mem.

Op. Den. Def.'s Mot. Summ. J. and Req. for Hr'g ("Summ. J. Order"), ECF No. 20; Mem. Op.

Granting in Part and Den. in Part Pl.'s Second Mot. to Compel Disc., Den. Def.'s Mot. for

Protective Order, and Granting in Part Pl.'s Mot. for Sanctions ("Sanctions Order"), ECF No. 66.

A summary of the alleged facts follows.[1]

In April 2018, Capital City hired Ms. Vaughan to work as a Special Police Officer in its

D.C. shelter unit.  Am. Compl. ¶ 11, ECF No. 42.  In June 2018, Ms. Vaughan sought to transfer

to a different unit and change shifts.  *Id.* ¶ 12.  The transfer would immediately increase her

hourly pay and had a greater potential to lead to future promotions; the shift change would allow

Ms. Vaughan to be home when her child returned from school.  *Id.*  She notified Ray Gordon,

commander of Capital City's housing unit, of her requests.  *Id.*

Mr. Gordon informed Ms. Vaughan that Capital City would grant her requests and asked

her to come to the company's headquarters in Maryland to sign the relevant paperwork.  *Id.* ¶ 13.

When Ms. Vaughan arrived, Mr. Gordon "forced sexual intercourse upon her."  *Id.* ¶¶ 16–17, 20.

Ms. Vaughan, who was married, had done nothing to suggest to Mr. Gordon that she was

interested in a sexual relationship.  *Id.* ¶¶ 19, 22.  Immediately afterwards Ms. Vaughan told a

friend about the sexual assault.  *Id.* ¶ 20.

A week or two later, Mr. Gordon summoned Ms. Vaughan to the property of a company

he owned.  *Id.* ¶ 21.  Ms. Vaughan hoped that this meeting would address her transfer and shift

change requests, which had not yet been approved.  *Id.*  When she arrived, Mr. Gordon was

sitting in a Capital City vehicle.  *Id.* ¶ 22.  He told her to get inside.  *Id.*  Ms. Vaughan sat in the

front passenger seat, where Mr. Gordon "immediately began touching her."  *Id.*  Then Mr.

---

[1] Because the factual record is still undeveloped—in part because Defendants have failed to fully respond to Ms. Vaughan's discovery requests, *see generally* Sanctions Order—the Court draws the factual background from the allegations in the amended complaint.

Gordon told her to get into the back seat where he "subjected her to sexual intercourse." *Id.* Ms. Vaughan feared that if she resisted, Mr. Gordon would cause her to lose her job. *Id.*

Over the next several months, Mr. Gordon and other male Capital City employees with supervisory authority over Ms. Vaughan subjected her to "persistent sexual harassment" that encompassed, among other things, leering at her in a sexual manner in the workplace, sending suggestive and inappropriate texts, and mocking her for having had sex with Mr. Gordon. *Id.* ¶¶ 23, 24. One employee sent Ms. Vaughan an unsolicited and unwelcome picture of his penis. *Id.* ¶ 23. When Ms. Vaughan confided in a female colleague about the harassment, the colleague told her that she "had heard stories of other women being subjected to this same type of abuse, and that the company took no action to protect them." *Id.* ¶ 25.

Even though Ms. Vaughan was initially hesitant to report this "sexual exploitation by a group of superior officers who had control over the terms and conditions of her employment," in September 2018 she went to Capital City's headquarters and reported the sexual harassment to multiple members of the company's management, including Defendant Armenta Bell. *Id.* ¶ 27. She submitted a written complaint and a verbal statement that, to her knowledge, Defendants recorded. *Id.* ¶ 28. Ms. Vaughan's attorneys also sent a letter to Mr. Bell raising concerns about the "sexual harassment and early retaliation" Ms. Vaughan had faced. *Id.* ¶ 35.

But Defendants allegedly never remedied the situation. *Id.* ¶ 30. They did not take disciplinary action against Mr. Gordon or any of the other alleged perpetrators. *Id.* ¶ 32. Ms. Vaughan alleges that instead, Defendants retaliated against her by repeatedly denying the unit transfer and shift change that she had been promised. *Id.* ¶¶ 33–36. She was instead transferred to a less desirable and more dangerous assignment. *Id.* ¶ 46. Upon being told of this reassignment on October 31, 2018, Ms. Vaughan quit. *Id.* ¶¶ 46, 47.

On November 7, 2018, Ms. Vaughan filed a charge of sex discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), which cross-filed the complaint with local D.C. and Maryland agencies. *Id.* ¶ 51. When the EEOC failed to adjudicate her complaint within 180 days, Ms. Vaughan sought and eventually received a right-to-sue letter. Summ. J. Order at 9. She brought suit in this Court on October 13, 2020. Compl., ECF No. 1.

During the course of this litigation, Defendant Ms. Bell purported to abolish Capital City Protective Services II and registered a new Maryland LLC called Capital City Protective Solutions. Am. Compl. ¶ 2. According to Ms. Vaughan, the two companies are "virtually [i]ndistinguishable." *Id.*

## B.  Procedural Background

Ms. Vaughan originally alleged that Capital City Protective Services II violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; the District of Columbia Human Rights Act of 1977 ("DCHRA"), D.C. Code § 2-1401.01; and the Prince George's County Code as authorized by Maryland Code § 20-1202. *See* Compl. ¶ 1. Capital City moved to dismiss or, in the alternative, transfer venue, arguing that Ms. Vaughan did not satisfy the special Title VII venue provisions that would allow her to bring suit in the District of Columbia. Def.'s Mot. Dismiss, ECF No. 4. The Court denied the motion. *See* Venue Order. Capital City filed an answer, *see* Capital City Answer, ECF No. 14, and then moved for summary judgment on the Title VII claims, arguing that Ms. Vaughan had failed to exhaust her administrative remedies by not obtaining a right-to-sue notice from the EEOC. Def.'s Mot. Summ. J., ECF No. 17. The Court denied that motion, too, noting that Capital City had forfeited the exhaustion argument by

not raising it in its answer. *See* Summ. J. Order at 6–8. The Court also found that regardless, Ms. Vaughan had exhausted her administrative remedies. *Id.* at 8–10.

Ms. Vaughan then moved to amend the Complaint in order to add three additional defendants: Capital City Protective Solutions and Mr. and Ms. Bell. Renewed Mot. Am./Correct Compl. and Add Parties and Mem. in Supp. ("Mot. Amend Compl."), ECF No. 39. Through discovery, Ms. Vaughan concluded that the Bells had actively participated in the conduct at issue, which, if true, would make them liable under the DCHRA. *Id.* at 2–3. She also discovered that the Bells had dissolved Capital City Protective Services II and formed Capital City Protective Solutions—actions that they took, Ms. Vaughan claims, to attempt to become judgment proof. *Id.* at 2. ("[The Bells] bled [Capital City Protective] Services dry, closed its doors, claimed it is judgment proof to all its creditors, and reopened under a new name."). She also sought to add a claim for fraudulent conveyance under Maryland law, to reopen discovery, and to impose sanctions for discovery violations. *Id.* at 2–3.

The Court granted Ms. Vaughan's motion in part and denied it in part, granting in full her request to add the new defendants and claim.[2] *See* Order Granting in Part and Den. in Part Pl.'s Renewed Mot. Leave to Amend Compl. and Add Parties and for Sanctions, ECF No. 41. After the amended complaint was docketed, each defendant separately filed an answer. *See* Def. Armenta Bell's Answer, ECF No. 45; Def. Christopher Bell's Answer, ECF No. 46; Def. Capital City Protective Services II, LLC's Answer, ECF No. 47; Def. Capital City Protective Solutions, LLC's Answer, ECF No. 48. Mr. and Ms. Bell then filed a motion to dismiss them as individual defendants. Bell Defs.' Mot. Dismiss, ECF No. 54. Ms. Vaughan filed a memorandum in

---

[2] The Court has also granted in part and denied in part Ms. Vaughan's motion to compel discovery (ECF No. 61), granted in part Ms. Vaughan's motion for sanctions (ECF No. 61), and denied Defendants' motion for a protective order (ECF No. 62). *See* Sanctions Order.

opposition and the Bells filed a reply.  Mem. Opp'n to Bell Defs. Mot. Dismiss ("Pl.'s Opp'n"),

ECF No. 56; Bell Defs.' Reply Mem. Opp'n ("Bell Defs.' Reply"), ECF No. 60.  The Bells'

motion to dismiss is thus ripe for review.

### III.  LEGAL STANDARD

Defendants styled their motion as a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6).  *See* Bell Defs.' Mot. Dismiss.  But under the Federal Rules, such motions

are only available before a party has filed a responsive pleading.  Fed. R. Civ. P. 12(b) ("A

motion [under Rule 12(b)] . . . must be made before pleading if a responsive pleading is

allowed.").  Because Mr. and Ms. Bell have each filed an answer, they are not entitled to relief

under Rule 12(b)(6).  *See id.*  Under the circumstances, the Court will construe the Bells' motion

as a motion for judgment on the pleadings under Rule 12(c).  *See Alemayehu v. Abere*, 298 F.

Supp. 3d 157, 163–64 (D.D.C. 2018) (collecting cases doing the same).  The standard under both

rules is virtually identical.  *See Bloom v. McHugh*, 828 F. Supp. 2d 43, 49 (D.D.C. 2011)

("Because . . . the standards for a Rule 12(b)(6) motion and a Rule 12(c) motion for judgment on

the pleadings are identical, courts routinely construe motions to dismiss that are filed after a

responsive pleading as motions for judgment on the pleadings . . . ."); *but see Murphy v. Dep't of*

*Air Force*, 326 F.R.D. 47, 48–49 (D.D.C. July 18, 2018).

Accordingly, the Court will only grant the Bells' motion if the amended complaint fails

to plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  To state a plausible claim, the complaint must include facts

sufficient to "raise a right to relief above the speculative level . . . on the assumption that all the

allegations in the complaint are true."  *Id.* at 555.  A complaint must contain sufficient factual

matter to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Though "motions to dismiss"—and motions for judgment on the pleadings—"based on a statute of limitations defense are generally disfavored," *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, 7 (D.D.C. 2019), courts may grant such a motion "on statute of limitations grounds if 'the factual allegations in the complaint . . . clearly demonstrate all elements of the statute of limitations defense *and* that the plaintiff has no viable response to the defense.'" *See Brink v. XE Holding, LLC*, No. 11-cv-1733, 2022 WL 3334503, at *3 (D.D.C. May 19, 2022) (quoting *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 38 (D.D.C. 2014)). In other words, courts should grant a motion for judgment on the pleadings "on the ground of statute of limitations only if no reasonable person could disagree on the date on which the cause of action accrued, and the complaint on its face is conclusively time-barred." *See Thompson v. HSBC Bank USA, N.A.*, 850 F. Supp. 2d 269, 274 (D.D.C. 2012) (cleaned up).

## IV.  ANALYSIS

Private causes of action under the DCHRA must be initiated within one year of the discriminatory act or the discovery of such an act. D.C. Code § 2-1403.16(a). The Bells argue that because Ms. Vaughan was last employed by Capital City on October 31, 2018, her DCHRA claims against them—which were raised for the first time in the proposed amended complaint filed on September 29, 2022—are time-barred. Bell Defs.' Mot. Dismiss at 1–5. The Court disagrees.

At the outset, the Court concludes that Ms. Vaughan's original complaint was filed within the statutory limitations period. *Contra id.* at 5. Filing a charge with the EEOC is tantamount to filing a charge with D.C.'s Office of Human Rights ("DCOHR"). *Schuler v.*

*PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1372 (D.C. Cir. 2008) ("[F]or all intents and

purposes, the DCOHR receives charges filed with the EEOC.").  Under D.C. law, filing with the

DCOHR tolls the statute of limitations for private DCHRA actions.  *Estenos v. PAHO/WHO*

*Fed. Credit Union*, 952 A.2d 878, 882, 885–86 (D.C. 2008); *see also EEOC v. Com. Off. Prods.*

*Co.*, 486 U.S. 107, 115–16 (1988).  Ms. Vaughan filed her charge with the EEOC on November

7, 2018, so the DCHRA statute of limitations was tolled beginning that day.  *See* Sealed Doc. at

1, ECF No. 59.  It remained tolled until after Ms. Vaughan filed her first complaint in this Court.

Summ. J. Order at 4 (describing how Ms. Vaughan filed suit in this Court while her EEOC

complaint was still pending); D.C. Code § 2-1403.16 (tolling the DCHRA statute of limitations

while a charge filed with the DCOHR is pending).

True, the Bells were not named as defendants in the original complaint.  *See* Defs.' Reply

at 4.  But it was not until discovery began that Ms. Vaughan became aware of their "active

participation" in the allegedly unlawful conduct.  Mot. Amend Compl. at 3.  After that, Ms.

Vaughan promptly moved to add the Bells as named defendants.  *Id.*  Under Federal Rule of

Civil Procedure 15(c)(1), claims against a new defendant can relate back to the date of the

original complaint if three criteria are met: (1) the claim against the newly named defendant

arose out of the conduct, transaction, or occurrence set out, or attempted to be set out, in the

original pleading; (2) within the period provided by Federal Rule of Civil Procedure 4(m) for

serving the summons and complaint, the new defendant received notice of the action such that he

would not be prejudiced in defending it on the merits; and (3) the newly named defendant, within

that same period, knew or should have known that the action would have been brought against

him, but for a mistake concerning his identity.  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538,

545 (2010) (citing Fed. R. Civ. P. 15(c)(1)(B), (C)(i), (C)(ii)).

Based on the pleadings alone, the Court cannot find Rule 15(c)(1) facially inapplicable. For one thing, the DCHRA claims against the Bells arise out of the same conduct that was set out in the original complaint—the sexual harassment and assault Ms. Vaughan allegedly faced while working for Capital City.  Fed. R. Civ. P. 15(c)(1)(B), (C).  For another, the Bells are each 50% co-owners of the original named defendant, Capital City Protective Services, II, and do not argue that they lacked notice of Ms. Vaughan's claims against Capital City.  *See* Summons, ECF No. 3; Fed. R. Civ. P. 15(c)(1)(C)(i).  (Indeed, Ms. Bell was listed on the summons issued to Capital City as Capital City's registered agent.  *See* Summons at 1.)  And because the Bells were directly notified by Ms. Vaughan of the harassment she faced while working for Capital City, *see, e.g.*, Am. Compl. ¶¶ 27, 29, 33, 35, 42, they either knew or should have known that they could be held liable for that harassment.  *See* Fed. R. Civ. P. 15(c)(1)(C)(ii); *Kruspki*, 560 U.S. at 548–49.  The Bells' motion to dismiss does not reference Rule 15(c)(1), *see generally* Bell Defs.' Mot. Dismiss, and it is not apparent from the face of the pleadings that the DCHRA claims against them are improper under the rule.

In support of their motion to dismiss, the Bells cite *Brown v. Hill*, an unpublished D.C. Circuit opinion, for the premise that Rule 15(c)(1)(C) "does not allow for the relation back of adding a new party."  Defs.' Reply at 3 (citing *Brown v. Hill*, No. 21-7116, 2023 WL 3563076 (D.C. Cir. May 19, 2023) (per curiam)).  That misstates the law.  "Rule 15 expressly allows amended pleadings that change or add parties to relate back."[3]  3 Moore's Federal Practice – Civil § 15.19[3][a] (2024).  And *Brown* is inapposite, because there the court rejected a plaintiff's attempt to add new parties *and* new causes of action, which is not the situation here.

---

[3] If a plaintiff meets Rule 15(c)'s requirements for adding or changing defendants, the court "*must* allow relation back."  3 Moore's Federal Practice – Civil § 15.19[3][a] (2024) (emphasis added).

*See Brown*, 2023 WL 3563076, at \*2.  Ms. Vaughan's original complaint alleged violations of the DCHRA, which is the statutory basis for the amended complaint's new claims against the Bells.  *Compare* Compl. ¶¶ 1, 45, 48 (alleging violations of the DCHRA), *with* Am. Compl. ¶ 1 ("The discrimination and retaliation claims against Defendants Armenta and Christopher Bell arise only under the DCHRA.").

Setting aside Rule 15(c)(1), there is a second, independently sufficient reason for the Court to deny the Bells' motion.  As Ms. Vaughan explained when she sought to add the Bells as defendants, "evidence obtained during discovery shows their active participation in the unlawful conduct at issue."  Mot. Amend Compl. at 3.  The DCHRA's statute of limitations provides that private claims must be filed within one year of the discriminatory act *or discovery of* the discriminatory act.  D.C. Code § 2-1403.16(a).  Courts will not grant judgment on the pleadings on statutes of limitations grounds unless it is manifest on the face of the complaint that "the plaintiff has no viable response to the defense."  *See Brink, LLC*, 2022 WL 3334503, at \*3 (internal citations omitted).  The DCHRA itself provides Ms. Vaughan with a viable response to the Bells' defense: she moved to add the claims against them within one year of discovering their individual culpability.  It is not at all "conclusive[]" from "the complaint on its face" that the claims against the Bells are time-barred under the DCHRA.  *Haralson v. Mgmt. & Training Corp.*, 724 F. Supp. 2d 82, 85 (D.D.C. 2010) (internal citations omitted); *contra* Bell Defs.' Mot. Dismiss at 2 (discussing *Haralson*, 724 F. Supp. 2d 82).  Indeed, "the point in time at which the plaintiff knew or reasonably should have known [a cause of action had accrued] is normally a question of fact for a jury."  *Seed Co. Ltd. v. Westerman*, 840 F. Supp. 2d 116, 123 (D.D.C. 2012).

The Bells state in a conclusory fashion that "the discovery rule is inapplicable." Bell Defs.' Mot. Dismiss at 5. Under the discovery rule, a claim does not accrue until the plaintiff, exercising due diligence, has discovered or reasonably should have discovered all of the essential elements of her cause of action.[4] *Farris v. Compton*, 652 A.2d 49, 54 (D.C. 1994) (quotation omitted)). The Court does not consider the Bells' argument because it is insufficiently developed. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'") (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)). Nor does the Court address the parties' dispute over whether the Bells may be personally liable for the fraudulent conveyance claim, which falls outside the scope of the motion to dismiss. *See* Bell Defs.' Reply at 2 ("The argument advanced by the Defendants [in the motion to dismiss] was premised on statute of limitations only.") (footnote omitted).

Courts generally hesitate to grant motions to dismiss or motions for judgment on the pleadings based on statutes of limitations grounds. *Cf. Firestone v. Firestone*, 76 F.3d 1205, 1208–09 (D.C. Cir. 1996). The Bells have not given this Court reason to grant theirs.

### V.  CONCLUSION

For the foregoing reasons, Defendants Armenta and Christopher Bell's motion to dismiss is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 23, 2025                                          RUDOLPH CONTRERAS
                                                                             United States District Judge

---

[4] The DCHRA statute of limitations essentially incorporates this rule.

11